UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABCDE OPERATING, LLC, a limited
liability company, doing business as
THE PENTHOUSE CLUB,

    Plaintiff,

v.

RICK SNYDER, individually and in his
official capacity as Governor, STATE
OF MICHIGAN,

    Defendant.
_____/

Case No. 11-11426

Hon. John Corbett O'Meara

**OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
DENYING DEFENDANT'S MOTION TO DISMISS**

    Before the court is Plaintiff's motion for preliminary injunction, filed May 6, 2011, and Defendant's motion to dismiss, filed May 31, 2011. Both motions have been fully briefed. The court heard oral argument on July 14, 2011, and took the matter under advisement.

**BACKGROUND FACTS**

    Plaintiff ABCDE Operating, LLC, doing business as The Penthouse Club ("Penthouse"), filed this suit against Defendant Rick Snyder, both in his individual capacity and his official capacity as Governor of the State of Michigan. Penthouse operates an adult cabaret featuring clothed and semi-nude dancers on Eight Mile Road in Detroit, Michigan. Penthouse is challenging the constitutionality of Public Act 342 of 2010, M.C.L. 125.2833, which regulates signs that advertise sexually oriented businesses, on First and Fourteenth Amendment grounds.

The statute prohibits sexually oriented businesses from displaying signs that contain images, except for registered trademarks. In addition, "[t]he words on the sign shall not describe or relate to a specified sexual activity or to human genitals, pubic area, buttocks, anus, anal cleft, or female breasts." Id. The Act provides for enforcement – through a civil nuisance action – by the state Attorney General or the attorney for the local unit of government where the sign is located. M.C.L. 125.2837.

The outside of The Penthouse Club features a two-story sign with a photograph of a woman in a short skirt and a cleavage-revealing top. Although no official action has been taken against Penthouse to enforce the Act, Penthouse contends that the threat of enforcement exists. Penthouse requests that the court enjoin Defendant from enforcing the Act because it is unconstitutional as applied to it and on its face. Defendant, on the other hand, has filed a motion to dismiss Penthouse's complaint.

## LAW AND ANALYSIS

**I.     Standing**

Defendant suggests that Penthouse does not have standing to maintain an as-applied challenge to the Act because no enforcement action has been taken against it.[1] See generally Board of Trustees of the State Univ. of New York v. Fox, 492 U.S. 469, 482-83 (1989)

---

[1] Defendant also argues that Governor Snyder is not the proper defendant because the Act provides enforcement power to the state Attorney General or attorney for the local unit of government. Under the Michigan Constitution, "The governor shall take care that the laws be faithfully executed." Mich. Const. Article V, § 8. The governor's general duty to enforce the laws make him a proper party in this case. See Ex parte Young, 209 U.S. 123 (1908) (state official sued must have "some connection" with enforcement of allegedly unconstitutional act); Allied Artists Pictures Corp. v. Rhodes, 473 F. Supp. 560 (S.D. Ohio 1979), aff'd 679 F.2d 656, 665 n.5 (6th Cir. 1982) (governor proper party in challenge to statute based on his general enforcement powers).

(explaining difference between as-applied and facial challenges).  Penthouse need not wait for an enforcement action in order to challenge the Act, however.  "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.  But '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.'" Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (citation omitted).

      Penthouse is a "sexually oriented business" under the Act, and it displays a sign containing an image on its premises which is prohibited by the Act.  "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" Id. (citation omitted).  Penthouse has alleged a threatened injury sufficient to confer standing.

**II.     Preliminary Injunction Standard of Review**

      The factors the court must consider when considering a preliminary injunction are as follows: (1) the likelihood of success on the merits; (2) irreparable harm suffered by the plaintiff in the absence of an injunction; (3) whether the injunction would harm others; and (4) whether the injunction would serve the public interest.  See, e.g., In re DeLorean Motor Co., 755, F.2d 1223, 1228 (6th Cir. 1985).  These are "factors to be balanced, not prerequisites that must be met." Id. at 1229.

**III.    First Amendment Claim**

      Penthouse contends that M.C.L. 125.2833 violates the First Amendment.  The statute

provides:

> (1) Beginning January 1, 2011, the owner or operator of any sexually oriented business shall not erect, construct, or maintain on the premises of that sexually oriented business a sign that advertises or identifies the sexually oriented business and is visible outdoors unless the sign meets the requirements of subsection (2).
>
> (2) Subject to subsection (3), a sign authorized under subsection (1) shall display only words or numbers, or both.  The words on the sign shall not describe or relate to a specified sexual activity or to human genitals, pubic area, buttocks, anus, anal cleft, or female breasts.
>
> (3) A sign authorized under subsection (1) may display the sexually oriented business's or a credit card company's trademark if the trademark has been registered under the Lanham act, 15 USC 1051 to 1141n, or under 1969 PA 242, MCL 429.31 to 429.46.

The statute also contains the following definitions:

> (a) "Seminudity" means a state of dress in which the genitals, pubic area, buttocks, anus, anal cleft, or nipple and areola of the female breast are less than completely and opaquely covered.
>
> (b) "Sexually oriented business," includes, but is not limited to, an adult bookstore, adult video store, adult cabaret, adult motion picture theater, sexual device shop, or sexual encounter center or an establishment that regularly features live performances characterized by the exposure of a specified anatomical area or by a specified sexual activity or in which persons appear in a state of nudity or seminudity in the performance fo their duties.  However, sexually oriented business does not include a business solely because it shows, sells, or rents materials that may depict sex.
>
> (c) "Specified anatomical area" means less than completely and opaquely covered human genitals, pubic area, buttocks, anus, anal cleft, or female breast below a point immediately above the top of the areola; or human male genitals in a discernibly turgid state, even if covered.
>
> (d) "Specified sexual activity" means the fondling or other erotic

        touching of covered or uncovered human genitals, pubic area,
        buttocks, anus, anal cleft, or female breast.

Id.

    By its terms, the Act regulates outdoor signs that advertise or identify a sexually oriented business. Accordingly, the Act restricts commercial speech.[2] The Supreme Court has held that "even speech that does no more than propose a commercial transaction is protected by the First Amendment." City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 421 (1993). The Court reasoned that commercial speech is protected by the First Amendment because, among other reasons, "commercial speech serves to inform the public of the availability, nature, and prices of products and services, and thus performs an indispensable role in the allocation of resources in a free enterprise system." Discovery Network, 507 U.S. at 421 n.7 (citations omitted).

    "Commercial speech, however, is 'linked inextricably' with the commercial arrangement that it proposes, so the State's interest in regulating the underlying transaction may give it a concomitant interest in the expression itself. For this reason, laws restricting commercial speech, unlike laws burdening other forms of protected expression, need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny." Edenfield v. Fane, 507 U.S. 761, 767 (1993). The Court has developed a four-part test in analyzing commercial speech cases:

        At the outset, we must determine whether the expression is
        protected by the First Amendment. For commercial speech to

---

[2] Penthouse contends that the Act also regulates "pure speech," and thus must be subject to the strict scrutiny test. As discussed below, however, the court need not reach this question because the Act cannot survive the intermediate scrutiny test applicable to commercial speech.

> come within that provision, it at least must concern lawful activity and not be misleading.  Next, we ask whether the asserted governmental interest is substantial.  If both inquiries yield positive answers, we must determine whether the regulation itself directly advances the governmental interest asserted, and whether it is not more extensive than necessary to serve that interest.

Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 566 (1980).  "It is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it." Edenfield, 507 U.S. at 770 (citation and internal quotation marks omitted).

The parties agree that the first requirement is met, in that the commercial speech regulated concerns lawful activity and is not misleading.  As for the second requirement, the State asserts that it has a substantial governmental interest in "protecting minors, home values, and the integrity and safety of nearby residential neighborhoods." Def.'s Br. at 5.  Although the Act itself contains no statement of purpose, the Michigan Senate Bill Analysis provided this rationale for the Act:

> In some Michigan communities, sexually oriented businesses reportedly have placed on their property signs that display explicit images or have sexually suggestive content.  Because some of these businesses are near neighborhoods where children may be exposed to those messages, the signs are a concern for parents and others in the community.

See Compl. at Ex. 2.  Penthouse suggests that, because the Act does not contain a statement of purpose evidencing its "substantial governmental interest," it necessarily fails the *Central Hudson* test.  See Carroll v. City of Detroit, 410 F. Supp.2d 615, 623 (E.D. Mich. 2006) (holding city ordinance restricting the reselling of tickets unconstitutional where the ordinance contained no statement of purpose and the city provided no evidence concerning its alleged interest in

enacting the ordinance) (O'Meara, J.); see also Edenfield, 507 U.S. at 768 ("[T]he *Central Hudson* standard does not permit us to supplant the precise interests put forward by the State with other suppositions."). However, the State has provided some evidence, including the Senate Bill Analysis, regarding the legislative purpose behind the Act. The protection of minors is undoubtably a substantial governmental interest. See Athenaco Ltd. v. Cox, 335 F. Supp.2d 773, 782 (E.D. Mich. 2004) ("States have a long-established, compelling interest in regulating subjects concerning minors' well-being, including the right to prohibit the display and dissemination of sexually explicit materials to minors that are harmful to them, but that would not be considered obscene for an adult.").

The court must next consider whether the "regulation itself directly advances the governmental interest asserted, and whether it is not more extensive than necessary to serve that interest." Central Hudson, 447 U.S. at 566. "While the state need not pursue the least restrictive means, it must enact a statute that is 'reasonable' and 'narrowly tailored to achieve the desired objective.' The statute cannot 'curtail substantially more speech than is necessary to accomplish its purpose.'" Passions Video, Inc. v. Nixon, 458 F.3d 837, 843 (8th Cir. 2006) (citations omitted).

The Act fails to meet these requirements. The Act neither directly advances the State's interest in protecting minors, nor is it reasonably tailored to serve that interest. Although the State seeks to protect minors from sexually suggestive or explicit images, the Act prohibits sexually oriented business from displaying *all images* on their outdoor signs, except for registered trademarks. The State has not and cannot articulate how an absolute ban on images – whether sexually explicit or not – aids in the protection of minors or any other governmental

interest.  Further, businesses that are not "sexually oriented" as defined by the Act are not subject to the same prohibition.  Therefore, such businesses may maintain signs with sexually suggestive images without running afoul of the Act.[3]  "[T]he regulation distinguishes among the indistinct, permitting a variety of speech that poses the same risks the Government purports to fear, while banning messages unlikely to cause any harm at all."  Greater New Orleans Broadcasting Ass'n, Inc. v. U.S., 527 U.S. 173, 195 (1999) (broadcast regulations that irrationally distinguished between tribal casinos and privately operated commercial casinos held to not directly advance governmental interest and to be unconstitutional).  The Act curtails substantially more speech, in the form of *all* images, than is necessary to accomplish its purpose.  Accordingly, the court finds that the Act is unconstitutional and that Penthouse is likely to succeed on the merits of its claim.

   Because Penthouse has demonstrated a strong likelihood of success on the merits, it can also demonstrate irreparable harm, as the loss of First Amendment freedoms constitutes irreparable injury.  See Elrod v. Burns, 427 U.S. 347, 373-74 (1976).  "In cases involving the First Amendment, the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits.  This is so because, as in this case, the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute."  Nightclubs, Inc. v. City of Paducah, 202 F.3d 884, 888 (6th Cir. 2002), overruled on other grounds by 729, Inc. v. Kenton Cty. Fiscal Ct., 515 F.3d 485 (6th Cir. 2008).  Accordingly, the

---

[3] This discrimination based upon the identity of the speaker also likely violates the Equal Protection Clause.  See Police Dept. of City of Chicago v. Mosley, 408 U.S. 92, 96-97 (1972) ("[W]e have frequently condemned such discrimination among different users of the same medium for expression.").

court finds that the preliminary injunction factors weigh in favor of granting Penthouse's motion.

### III.     Defendant's Motion to Dismiss

In light of the above discussion, Defendant's motion to dismiss is denied.

### ORDER

IT IS HEREBY ORDERED that Plaintiff's motion for preliminary injunction is GRANTED and that Defendant is ENJOINED from enforcing M.C.L. 125.2833 until further order of the court.

IT IS FURTHER ORDERED that Defendant's motion to dismiss is DENIED.

s/John Corbett O'Meara  
United States District Judge

Date:  July 26, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, July 26, 2011, using the ECF system.

s/William Barkholz  
Case Manager
